MORTON (TAYLOR v.). See Case No. 13,-799.

MORTON (UNITED STATES v.). See Case No. 15,822.

MORTON (WOOD v.). See Case No. 17,958.

MORTON, The HAMILTON. See Case No. 5,992.

## Case No. 9,868.

### In re MOSELEY et al.

[8 N. B. R. 208.] [1]

District Court, S. D. Georgia. April, 1873.

BANKRUPTCY—HOMESTEAD—PROCEEDING IN STATE COURT—ASSIGNEE TO BECOME PARTY THERETO.

Where a homestead was set apart to a family, ten days before commencement of proceedings in bankruptcy. but from which judgment an appeal was then pending, the local statute declaring that the appeal suspends but does not vacate the judgment, *held*, the bankrupt court must respect the homestead right, though suspended, and will not take possession of the property for distribution to determine the validity or propriety of such judgment. but the assignee in bankruptcy will be directed to make himself a party to the proceedings in the state court. and first determine his right to the possession of the property, in that tribunal.

[Cited in Re Hall, Case No. 5,921.]

In bankruptcy.

[1] [Reprinted by permission.]

ERSKINE, District Judge. About the middle of April, 1872, the families of the present bankrupts, respectively, instituted proceedings in the court of ordinary of Lowndes county, in this district, under the thirteenth section of the act of October 3d, 1868, commonly called the homestead or exemption law, to have set apart and adjudged for the use of the families of each of the bankrupts, the real and personal property exempted by the provisions of that law. The value of the realty that may be set apart for the wife and children of the bankrupt may be two thousand dollars in specie, and in personal property one thousand dollars in specie. The ordinary appointed appraisers to appraise and allot the exempted property. They acted and returned their actings and doings in the premises into the court of ordinary. On the 27th of April, 1872, the ordinary approved the returns and set apart the property so appraised to the families of the bankrupts. On the 1st of May, certain creditors of the bankrupts took appeals to the superior court of said county from the judgments of the court of ordinary, on the ground that the property set apart was of greater value than that placed upon it by the appraisers, and sanctioned by the decision of the court of ordinary. These several appeals are now depending and undetermined in the appellate tribunal—the superior court of Lowndes county.

An appeal brings up the whole record and is a de novo investigation. "The appeal," says the Code, § 3572, "suspends, but does not vacate judgment; and if dismissed or withdrawn the rights of all parties are the same as if no appeal had been entered." But, notwithstanding the case is to be tried over again, it is obvious, from the very words of the Code itself, that the decision or judgment pronounced by the inferior court remains of force, though the fruits of the judgment cannot be gathered by the parties in whose favor it stands until the appellate court shall have decided that there is no error therein. If, however, the court find that there is error in the judgment, it will reverse the same in whole, or. I apprehend, in part, and then enter such judgment, according to the justice of the case, as the inferior court—in this case, the court of ordinary of Lowndes county—ought to have entered.

As already seen, the appeals from the several judgments of the court of ordinary to the superior court were taken on the 1st of May, 1872. On the 6th of the same month and year, the creditors of Moseley, Wells & Co., filed their petition in this court, under the thirty-ninth section of the bankrupt act, thus initiating proceedings against them in involuntary bankruptcy; and, on the 5th of June, 1872, Moseley, Wells & Co. were, by judgment of this court, declared bankrupts.

Counsel for the creditors contended that on the filing of the petition in involuntary bankruptcy, on the 6th of May, 1872, the jurisdiction of the state courts over the proceedings then pending, by virtue of the state statute of October 3d, 1868, in regard to the several homesteads and exemptions, ceased, and the jurisdiction of this court attached—drawing to it for adjudication and distribution among the creditors all the estate of the bankrupts, and in which estate was included the property set apart for and adjudged to the families of the several parties declared bankrupts on the 5th of June, 1872. It was further insisted, that the judgments pronounced by the court of ordinary on 27th of April, 1872, were respectively but mesne process; and being rendered within four months next preceding the commencement of the proceedings in involuntary bankruptcy, were, by force of the fourteenth section of the bankruptcy act [of 1867 (14 Stat. 522)], dissolved. In support of this last point, counsel cited and relied upon the case Randell v. McLain, 40 Ga. 162. There a judgment had been rendered by the federal court of South Carolina, and upon which judgment a suit was instituted in the superior court of Chatham county, Georgia. Warner, J., in delivering the opinion of the court, said: "The judgment obtained in the state of South Carolina in the district court could not be collected in this state, except by a suit thereon at common law, or by process of attachment; and in either case the proceeding instituted to collect the amount of the judgment debt in this state is mesne process. There can be no doubt that a writ of attachment is mesne process, and if sued out within four months immediately before the defendant is declared a bankrupt it must be dissolved as provided by the bankrupt act. And as to the judgment upon which the action was brought to recover its contents, it was a mere chose in action, with many of the attributes of a promissory note or bill of exchange, and the proceeding instituted to collect it was also but mesne process, for all writs necessary to a suit between its beginning and end are mesne process. And this is the well-established rule of practice in courts governed by the principles of the common law; therefore, the latter is affected by the bankrupt act like the former—the process of attachment. Tommey v. Finney, 45 Ga. 155, was also presented. This case consisted originally of two—one a suit in a magistrate's court, appealed to the superior court; the other, a suit brought in the superior court after the magistrate's case had been appealed. Both accounts, it seems, were due when the suit on one was brought in the magistrate's court. Montgomery, J., in giving the opinion of the supreme court, said: "It is insisted by defendant in error that both accounts are, under the agreed statement of facts, but one, and should have been sued in the same action. * * * The reply is, that an appeal is a de novo investigation and

the first action is a suit now pending (on appeal) in the superior court (Code, § 3571); and hence there is no judgment to bar." And the court held that the pendency of the first action as a defence to the account could not be taken advantage of by a plea in bar at the second term, but ought to have been by plea in abatement. It will be perceived that this case turned on a point of pleading and did not touch the legal status of the judgment rendered in the magistrate's court.

It was not questioned, I believe, that the court of ordinary had jurisdiction over the subject matter of the homestead. When the court of ordinary rendered its decisions on the homestead proceedings, the judgments were binding and effective, if no appeals had been taken to the superior court. Now, it is to the Code that attention must be directed to ascertain what effect each of the appeals had on the legal condition of the judgments rendered by the court of ordinary on the 27th of April, 1872, and appealed on the 1st of May following—six days prior to the commencement of the proceedings in involuntary bankruptcy. As previously stated, the 3572d section of the Code, says: "An appeal suspends, but does not vacate judgment." This language is too plain to need construction. I entirely agree with the counsel that the mere application for a homestead gives no lien on the property, and, also, that a lien, to have any standing in the bankrupt court, must be a lien at the time the party becomes a bankrupt. If, therefore, the judgments entered by the court of ordinary on the homestead exemption, in favor of the families of the parties since declared bankrupts, are not liens attached to the property allotted and set apart, then the property, by operation of the bankrupt law, is before this court for adjudication. Counsel cited the case of Woolfolk v. Murray, 44 Ga. 133; Seymour v. Morgan, 45 Ga. 201; and Inferior Ct. of Clark Co. v. Haygood, 15 Ga. 309, to show that no lien existed, notwithstanding the judgments of the court of ordinary in favor of the families of the present bankrupts. In Inferior Ct. of Clark Co. v. Haygood, Starnes, J., said: "By the provisions of our judiciary system, an appeal at common law vacates the judgment on the first trial, for all the purposes of a rehearing." If it was the intention of the court, as was insisted, to decide that when an appeal is entered from an inferior to a superior court, that that act vacates the judgment appealed from, then the reply is, that since the time of that decision the rule of law—if rule of law it was—has been changed by the code, which expressly declares that the judgment is suspended, not vacated. But still, I entertain doubts that the sentence just cited from the report of the case warrants a meaning so extended and strong as has been contended for. Counsel argued that the law of this state is now as it was at the time Inferior Ct. of Clark Co. v. Haygood was

decided, and the case of Seymour v. Morgan was referred to. In that case McCay, J., in pronouncing the opinion of the court, observed: "One buying land after judgment against the owner, which has been vacated by an appeal, buys it with notice and subject to the final judgment, but he is no more a purchaser, after the judgment, than one who buys with notice of the vendor's lien, or with notice of any other fact which will make the land subject to a judgment against the vendor." If it was the purpose of the court to hold that an appeal vacated a judgment rendered in the court from which the appeal was taken, to my mind it seems directly repugnant to the very words and spirit of the 3572d section of the Code. If the word "vacated," as found in the report, is not there by mistake of the printer, or oversight, then it is manifest to the reader that a purchase, under the circumstances mentioned in the sentence quoted, would not find a judgment which has been vacated—made void—an impediment to the title. Woolfolk v. Murray—In this case the wife, after her husband had been adjudged a bankrupt and the property had passed into the hands of the United States marshal, made application to the ordinary to have a homestead set apart for herself and children, under the act of 1868. McCay, J., in giving the judgment of the court, said: "But it is very clear that until it (the homestead) is laid off there is no property or right of property in the family. * * * It is a right which depends for its existence upon the judgment of the court." And a like thought is expressed in a subsequent part of the opinion. That learned judge says: "It is clear to us, therefore, that this right of the wife is not title, lien or encumbrance upon the husband's property until it has been appropriated by a judgment." And as there was no judgment of the court of ordinary, or other court having jurisdiction, anterior to the adjudication of bankruptcy, the court held that the jurisdiction over the property sought to be exempted passed to the federal court to be there adjudicated. Lumpkin v. Eason, 44 Ga. 339.

A judgment is the sentence of the law, pronounced by a court or a judge thereof, upon a matter in issue in any cause before it. I am of the opinion that each of the appeals taken on the 1st of May, 1872, from the court of ordinary to the superior court, in nowise affected the decision or judgment of the former tribunal, further than to suspend or interrupt it from proceeding, until the cause appealed is reviewed and passed upon by the appellate court; in other words, that each of the judgments created a lien upon the property set apart to the families, respectively, of the present bankrupts, and each judgment so rendered remains intact, though for the time fruitless.

Whether the property set apart for the families of these bankrupts was partnership

property (for this is a point in controversy)—property held in trust for the firm creditors, or whether, if partnership property, these families would be entitled to homesteads out of it, are questions that this court, in this proceeding, declines to pass upon. And the same may be said as to the other points presented in argument, or other questions which might arise out of the facts of the case. On none of these matters will the court anticipate an opinion.

I instruct the assignee forthwith to apply to the honorable, the superior court of Lowndes county, for leave to be made a party to the proceedings there pending on the several appeals, taken from the court of ordinary of Lowndes county, and there contest the proceedings had in the inferior court and the constitutionality of the statute.